# IN THE COURT OF APPEALS OF IOWA

No. 22-1090
Filed December 6, 2023

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**STEPHEN JOSHUA WILSON,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Adair County, Stacy Ritchie, Judge.

Stephen Johnson Wilson appeals his conviction of disarming a peace officer. **CONVICTION AND SENTENCE CONDITIONALLY AFFIRMED, RULING VACATED AND REMANDED.**

Elena M. Greenberg of Greenberg Law, PLLC, Des Moines, for appellant.

Brenna Bird, Attorney General, and Nick Siefert and Kyle Hanson (until withdrawal), Assistant Attorneys General, for appellee.

Considered by Tabor, P.J., and Badding and Chicchelly, JJ.

**CHICCHELLY, Judge.**

Stephen Johnson Wilson appeals his conviction of disarming a peace officer. He argues the evidence is insufficient and the conviction is contrary to the weight of the evidence. Because substantial evidence supports the verdict, we affirm in part. But because the trial court applied the incorrect standard in ruling on his motion for new trial, we reverse and remand for the trial court to consider the motion applying the correct standard.

## I.     *Background Facts and Proceedings.*

On the very hot day of June 2, 2020, a semi-truck driver placed a 911 call to dispatch. He stated a man was standing in the middle of the interstate and, when he slowed down to avoid hitting him, the man jumped onto his moving semi. The driver testified the man threatened him by saying, "help me or I'm going to kill you" and continued to hold on to the moving truck. The driver continued to slowly drive forward, pulling to the side of the road in an attempt to deescalate the situation, but the man would not get off the truck. After three to five minutes, the driver called 911 and told dispatch that he would only stop the truck once officers arrived as he was scared and not sure what to expect. The man was later identified as Stephen Johnson Wilson. According to Wilson, he had walked from south Des Moines, Iowa, to Casey—a distance of approximately fifty miles, although he had received a ride from a law enforcement officer for a portion of that distance. Wilson later testified he was trying to flag down vehicles to receive help.

Officer Daniel Irving of the Stuart Police Department was the first to arrive on the scene. He detained Wilson and placed him in his air-conditioned patrol vehicle to cool down. Based on his general demeanor and their conversation,

Officer Irving was concerned that Wilson might be suicidal. Troopers Luke Ferguson, Kyle Mass, and Dana Tews of Iowa State Patrol arrived and took over for Officer Irving. They too were concerned about Wilson's behavior. Trooper Mass attempted to speak to Wilson but noted he "was not making any sense" and made statements such as, "the price is too great, and he has to die for them." Wilson would not explain his statements, and he continued to repeat them and then stare off into space. Due to the officers' concerns, Trooper Mass placed Wilson in his patrol vehicle and, with Trooper Ferguson following in a separate vehicle, attempted to transport him to the hospital for physical and psychiatric evaluation.

During the drive, Wilson began "screaming uncontrollably" and hyperventilating. Troopers Mass and Ferguson pulled over and called for emergency medical services, and Trooper Ferguson retrieved water for Wilson. Trooper Tews returned to assist as well. When the ambulance arrived, they transferred Wilson's handcuffs to his front and the paramedics moved him to the vehicle by stretcher. Once Wilson was inside the ambulance, the paramedics almost immediately motioned for the troopers and told them Wilson was fighting them and attempting to escape. All three troopers ran to the ambulance.

They entered to Wilson "kicking, throwing punches" and "yelling, screaming." The troopers attempted to verbally de-escalate the situation to no avail. They also unsuccessfully tried to hold him down and transfer the handcuffs to the stretcher. Wilson even bit Trooper Mass. Despite their efforts, all three troopers were unable to control Wilson. At that point, Trooper Tews readied his taser, told the others he was going to use it, and warned Wilson that he would use

it if he did not calm down. When Wilson did not stop fighting, Trooper Tews deployed the taser. Wilson briefly hesitated, but he then began fighting again. Trooper Tews then warned Wilson a second time and attempted to tase him again.

Still in handcuffs, Wilson attempted to take the taser from Trooper Tews, turning it off in the process. Trooper Tews was able to maintain control of the taser despite Wilson's efforts to kick and use his feet to push against him. Trooper Tews was ultimately able to pull the taser away from Wilson, turn it back on, and deploy it again. Finally, the troopers were able to manually control Wilson, and the paramedics administered a sedative. Wilson was safely secured and transported to the hospital.

After these events, Wilson was charged with disarming a police officer, a class "D:" felony. Following jury trial, he was found guilty of disarming a peace officer, interference with official acts, and assault. He moved for a new trial. The trial court denied this motion, and Wilson timely appealed. He challenges his conviction based on both the sufficiency and weight of the evidence.

## II. Sufficiency of the Evidence.

Wilson contests the sufficiency of the evidence supporting his conviction for disarming a peace officer. The trial court instructed the jury that to find Wilson guilty of disarming a peace officer, the State was required to prove the following:

> 1. On or about June 2, 2020, the defendant knowingly or intentionally removed or attempted to remove a dangerous weapon from the possession of Dana Tews, a peace officer as defined in Instruction No. 20.
> 2. At that time, Dana Tews was performing an act within the scope of his lawful duty or authority as a peace officer.
> 3. The defendant knew or should have known that Dana Tews was a peace officer.

Specifically, Wilson takes issue with the first two elements. He contends Trooper Tews did not act within his scope of lawful duty or authority and contests the knowledge requirement. We review sufficiency-of-evidence claims for correction of errors at law. *State v. Crawford*, 974 N.W.2d 510, 516 (Iowa 2022). After considering the evidence in the light most favorable to the State, we will affirm if the verdict is supported by substantial evidence. *Id.* "Evidence is substantial if, 'when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt.'" *State v. Wickes*, 910 N.W.2d 554, 563 (Iowa 2018) (citation omitted).

First, Wilson claims the State did not prove Trooper Tews acted within the scope of his duty. He contends that the tasing was an unreasonable use of force and therefore excessive under both the U.S. and Iowa Constitutions. *See* U.S. Const. amend. XIV; Iowa Const. art I, §8. He also argues the State failed to provide video footage of the incident or evidence of proper tasing methods and asks us to adopt an additional knowledge requirement. We consider each argument in turn.

*A. Action Within Scope of Lawful Duty and Authority*

Wilson first argues that Trooper Tews's use of the taser itself and the frequency were unreasonable. Wilson specifically cites his own poor condition, both physically and mentally, as the reason why the use of force was inappropriate. Peace officers are given the authority to detain people under "reasonable grounds [of belief] that a person is mentally ill, and because of that illness is likely to physically injury the person's self or others if not immediately detained." Iowa Code § 229.22(2)(a)(1) (2020). Further, peace officers are allowed to execute the

use of force "necessary to accomplish the detention." *State v. Hudson*, No. 15-1367, 2016 WL 7403711, at 4 (Iowa Ct. App. Dec. 21, 2016).

There is substantial evidence to show Trooper Tews had the authority both to detain Wilson and to tase him. First, Trooper Tews had reasonable grounds to believe Wilson was a danger to himself and others. Wilson's behavior was erratic and unsafe. The jury evidently found the truck driver's testimony credible, which described Wilson as jumping into traffic and onto a moving semi-truck, saying, "help me or I'm going to kill you." Officer Irving further described Wilson as "distraught" and recalled him stating he "wanted to smoke himself to death." The officers took these statements as expressions of suicidal ideations.

There is also substantial evidence that the use of force was reasonable given the circumstances. Testimony from multiple officers described Wilson as violently flailing during the incident. Trooper Tews described the appropriate use of a taser for "anytime you can't subdue a person by your hand control" or verbal means. Prior to deploying the taser, the troopers attempted first to use verbal de-escalation and manual control techniques, such as holding Wilson down and handcuffing him to the cot. They were not able to get him under control. While Wilson counterargues that the State did not provide adequate showing for the proper use of a taser, our review of the record clearly shows such evidence. This is in the form of Trooper Tews's testimony regarding the appropriate use of a taser. Further, while Wilson testified contrary to the State's witnesses, it is not our position upon review to judge credibility; instead, the jury was free to make its own conclusions regarding the credibility of evidence. *State v. Nitcher*, 720 N.W.2d 547, 556 (Iowa 2006). Our only consideration is whether substantial evidence

supports the verdict. *Crawford*, 974 N.W.2d at 516. Upon review, we find the verdict is supported and affirm.

Wilson additionally contends the use of force was unconstitutional because of its excessiveness and the State failed to provide evidence to the contrary. *See* U.S. Const. amend. XIV; Iowa Const. art I, § 8. We review alleged violations of constitutional rights de novo. *Wickes*, 910 N.W.2d at 564. Because we have already determined the use of force was not excessive, we similarly agree that it was not unreasonable under either Constitution. Further, the State has no affirmative duty to show compliance with the Fourth Amendment as an element of this offense. *State v. Chivalan*, No. 20-0356, 2021 WL 1662200, at *3 (Iowa Ct. App. Apr. 28, 2021) (finding no authority that Iowa Code section 708.13 requires "the State to prove beyond a reasonable doubt that the officer complied with the Fourth Amendment"). For these reasons, we similarly reject his constitutional argument.

Finally, Wilson claims the State failed to provide video evidence of the officers exerting an appropriate use of force and therefore, the State did not meet its burden in proving Trooper Tews acted within his scope of authority. While additional footage perhaps would have been probative, Wilson provides no authority explaining why the lack of footage entitles him to relief. *See* Iowa R. App. P. 6.903(2)(g)(3) (waiving issues that fail to cite supporting authority). No video footage is available showing the incident itself, but the State provided substantial evidence of what took place inside the ambulance and during the initial incident. This includes multiple witnesses' testimony, camera footage from the semi-truck,

and the audio from the dispatch call. A reasonable jury could find this evidence adequate to convict him.

### B. Knowledge Requirement.

Iowa Code section 708.13(1) requires Wilson to have attempted to remove the dangerous weapon *knowingly*, and Wilson argues we should apply this knowledge requirement to whether Trooper Tews acted within his lawful scope of duty, citing *State v. Sullivan*. No. 08-0541, 2009 WL 250287, at *2 (Iowa Ct. App. Feb. 4, 2009) (noting an element of interference with official acts is "knowledge that the officer was acting within the scope of his lawful duty or authority"). In other words, he encourages us to interpret the jury instructions as requiring that Wilson knew Trooper Tews was acting within the lawful scope of his duties, not just that he knew Trooper Tews was a peace officer. But *Sullivan* addresses a completely different offense. *Id.* The jury instructions here required proof that Wilson knowingly removed or attempted to remove the Taser, that he knew Trooper Tews was a peace officer, and that Trooper Tews was acting within the scope of his lawful duty. Wilson neglected to object to the jury instructions, so "they therefore become the law of the case, right or wrong." *State v. Twigg*, No. 13-1094, 2014 WL 3747676, at *2 (Iowa Ct. App. Jul. 30, 2014). The parties do not dispute that Wilson knew Officer Tews was a peace officer. We therefore find substantial evidence supports the verdict and affirm.

### III.    Weight of the Evidence.

Finally, Wilson argues that his conviction was contrary to the weight of the evidence and the trial court applied the incorrect standard when it denied his

motion for new trial[1]. We use an abuse of discretion standard when considering rulings on motions for new trial. *Nitcher*, 720 N.W.2d at 559. "A court may grant a new trial where a verdict rendered by a jury is contrary to law or evidence." *Id.* This contrasts with the sufficiency-of-the-evidence standard, which gives deference to the State. *Crawford*, 974 N.W.2d at 516 ("When evaluating the sufficiency of the evidence, we consider 'whether, taken in the light most favorable to the State, the finding of guilt is supported by substantial evidence in the record.'" (citation omitted)). Instead, "the power of the court is much broader" when ruling on a motion for a new trial. *State v. Ellis*, 578 N.W.2d 655, 658 (Iowa 1998). The trial court is given the opportunity to assess the credibility and weight of the evidence. *Id.*

> In ruling on the motion for new trial, the trial court stated:

> The defendant asserts that the verdict was contrary to the law or evidence. In this case the Court finds that there was ample evidence at trial, that accordingly the verdict was not contrary to the law or the evidence in this case, that the evidence viewed in the light most favorable to the State, including legitimate inferences and presumptions does substantiate the verdict in this case.
> So the motion for new trial and the motion in arrest of judgment are denied.

The trial court gave clear deference to the State while giving no indication it weighed the evidence itself. Because the trial court abused its discretion, we must reverse and remand for the trial court to rule on the motion under the correct standard. *See Nitcher*, 720 N.W.2d at 560.

---

[1] While not at issue here, defendants are encouraged "to alert the district court when it applies the incorrect standard in order to preserve error." *State v. Rethwisch*, No. 22-0530, 2023 WL 5607147, at *6 (Iowa Ct. App. Aug. 30, 2023). Wilson preserved error by raising this argument, so we consider it on appeal.

*IV.* *Disposition.*

We affirm Wilson's conviction conditionally because there is substantial evidence.  But we reverse and remand to the trial court to rule on his motion for new trial with the correct weight-of-the-evidence standard.

**CONVICTION AND SENTENCE CONDITIONALLY AFFIRMED, RULING VACATED AND REMANDED.**